W. D. Houston, *Appellant,* v. Charles Forman, *et al.,*
*Appellees.*

En Banc.

Opinion Filed June 10, 1926.

Petition for Rehearing Denied July 27, 1926.

1. One obtaining a deed from an escrow holder by fraudulent means acquires no title thereby as there is no delivery.

2. Where a deed is placed in escrow to be delivered only upon the happening of a certain contingency, and where such deed is obtained from the escrow holder by fraud, the grantor is not thereby deprived of his title to his property.

3. The possession of one whose title is deraigned through a deed fraudulently obtained from the escrow holder is notice to one who purchases from him of the true state of the title.

4. In the absence of some act of estoppel upon the part of the true owner of the land, his title is not affected by the act of the person in possession of such land deraigning

his title through a deed which has been fraudulently taken from its escrow holder.

5. Even though a deed fraudulently procured from an escrow holder has been placed on record and such record shows an apparent title in the one having possession of the land, in the absence of an estoppel upon the part of the owner thereof such recording does not affect the true title, and a mortgage executed by such person in possession to another who has no actual notice of the defective title creates no lien upon such land, as against the holder of the actual legal title.

An Appeal from the Circuit Court for Okaloosa County; A. G. Campbell, Judge.

Decree reversed.

*Walter Kehoe* and *John J. Kehoe,* for Appellant;

*Carter & Carter* and *John L. Moore,* for Appellees.

GIBBS, Circuit Judge.—Alleging a breach in the mortgage by failure to pay the interest due May 1, 1920, of $155.32, claiming the benefit of the acceleration clause therein, Charles Foreman filed his bill of complaint against M. D. Barnett and J. A. Richbourg and their wives on July 21, 1920, praying foreclosure thereof. The defendants answered denying the breach. On February 8, 1922, an amended bill of complaint was filed and in this bill the appellant is made a party, the complaint in the sixth paragraph of his bill averring "that the complainant is informed that the respondent W. D. Houston claims some interest in the lands involved herein and hereinbefore set forth and described, but that complainant alleges that whatever said claim may be, that said claim or interest is subordinate to the interest of the complainant."

On April 3, 1922, the appellant answered said amended bill claiming title to the land and pleads suit pending in the court to set aside the very mortgage which suit "is now pending in the Supreme Court upon appeal from the order of the Circuit Court sustaining complainant in this suit's demurrer to his bill of complaint."

After reversal of the decree of the Circuit Court by the Supreme Court there was a motion to consolidate the foreclosure proceeding and the proceeding brought by appellant and February 5, 1924, the causes were consolidated.

Evidence was taken and April 29, 1924, the Circuit Court rendered its decree finding the equities with Charles Foreman and against the appellant as to said mortgage and with the appellant as to the other defendants, ordering that subject to the mortgage lien of Charles Foreman the deed of appellant to the Adams of January 23, 1919, and the deed from the Adams to Barnett and Richbourg, be annulled and cancelled and the records of said deeds be likewise annulled and cancelled, that Charles Foreman as mortgagee of Barnett and Richbourg recover the amount of the mortgage indebtedness with an attorney's fee and costs fixing a short day for the payment of said sums, and further decreeing that in default of such payment Barnett, Richbourg, the Adams and their respective wives, and appellant and all parties claiming or to claim said land by, through or under them be foreclosed, etc., and that the land be sold by a master of the court in accordance with said decree. From this decree appellant appealed.

The record discloses that the appellant W. D. Houston in January, 1919, agreed to sell to Obie Adams and John Q. Adams certain land owned by him in Okaloosa county, near the town of Crestview. The purchasers agreed to pay the appellant the sum of $4,540.00, $200.00 of which was paid in cash, $200.00 was to be paid in November, 1919, and

the balance of $4,140.00 was to be paid January 23, 1929. The terms and conditions of said agreement being reduced to writing and, in triplicate, executed by the parties. Pursuant to the agreement the appellant, joined by his wife, January 24, 1919, made and signed in the presence of a notary and witnesses and acknowledged a deed to the Adams for this land. In further pursuance of the agreement this deed was delivered to the Bank of Crestview together with the note for the balance of the purchase price of $4,140.00, and a copy of the written agreement. It was understood and agreed by the Adams, the appellant, and the Bank of Crestview that the deed was not to be delivered by the bank, or received by the grantees, or any person claiming under them, until the full purchase price had been paid. No revenue stamps had been attached to the deed and both the Adams and appellant understood that no title would pass to the former, or any assignee of theirs, until the purchase price had been paid.

Under the agreement the Adams went into possession of the land.

In April, 1919, one M. D. Barnett, acting for himself and one J. A. Richbourg, without the knowledge or consent of appellant and contrary to the terms of the escrow agreement, upon the representation that they wanted it on a trust receipt pending an investigation of the matter of consummation of a trade they had up with the Adams and without the knowledge of or consent of the bank to their subsequent actions, obtained from the Bank of Crestview the deed, giving the bank the receipt of Barnett and Richbourg, dated April 23, 1919, therefor. On the same day that the receipt is dated Barnett and Richbourg caused the deed to be recorded in the public records of Okaloosa county, at the same time causing also to be recorded in such record what purported to be a warranty deed from the

Adams, joined by their wives, to Barnett and Richbourg dated March 5th, 1919. Barnett and Richbourg were fully acquainted with the original agreement between the appellant and the Adams for the purchase of such land.

Barnett and Richbourg by an application dated April 10, 1919, requested a loan of George M. Foreman and Company, of Chicago, through Daniel Campbell & Son of De-Funiak Springs, of $2,250.00. The applicants represented that the land was then occupied by a tenant, and further that the title to the land was vested in J. A. Richbourg and M. D. Barnett, and, further, that they had been in actual peaceful possession of the land for two months, and no mention was made of any right of the appellant or any lien because of the unpaid purchase price, they having full knowledge that the only payment made to appellant was the initial payment of $200.00. This loan was recommended under date of April 25th, 1919, by Daniel Campbell and Son, who sign themselves as "Agent of applicant." On May 6, 1919, Barnett and Richbourg made a mortgage to one Charles Foreman, the person selected by said George M. Foreman & Company, to secure the payment of eleven notes, signed by them, dated May 1, 1919, the principal note due May 1, 1929, for $2,250.00, the other ten for annual interest payments upon the principal sum due May 1, 1920, and subsequent to and including May 1, 1929. In this mortgage the mortgagors covenant that they have a good and merchantable title in fee simple to the premises free and clear from all encumbrances with full right and authority to convey the same and fully warrant the same. Though this mortgage is dated May 6, 1919, it does not appear to have been acknowledged until July 14, 1919, or recorded until July 18, 1919.

On August 28, following, check of Foreman & Company

was sent Daniel Campbell & Son for the mortgagors for the principal sum less commission fee of $56.23.

Toward the latter part of April, 1919, Barnett and Richbourg told appellant that the Adams had sold "their interests in this land to them," and in November, 1919, the further payment of $200.00 was made to appellant.

Barnett and Richbourg were in possession of the land probably from March, 1919.

Quite evidently from the decree appealed from the chancellor felt that the possession of Richbourg and Barnett under deed from the Adams, who held apparently under deed from the appellant, in the absence of actual notice by Charles Foreman of the infirmity in the title between the appellant and the Adams or Barnett and Richbourg, was sufficient to give Foreman a superior equity to that of the appellant.

We feel that the chancellor has overlooked the fact that the possession of Barnett and Richbourg was entirely consistent with their rights as assignees of the rights of the Adams, and that their possession, notwithstanding their written declarations to the contrary in the application for the loan, and in the entire absence of any act of the appellant which would estop him from setting up his title to his land, should have put the mortgagee upon notice of the true state of the facts. It appears that these, with ordinary diligence, could have been secured by the mortgagee's company.

To hold that a man's land is to be forfeited and sold for the debt of another, for which indebtedness he is in no manner responsible, is inconsistent with justice and abhorrent to equity. Lenders who are so careless in the extension of credit upon such security are not entitled to much sympathy.

The law of this case has been fully decided by the previ-

ous case of Houston v. Adams, 85 Fla. 291, 95 South. Rep. 859.

The original bill of complaint in that case of the appellant and the demurrer of the appellee do not appear in this record and are to be found in the record of the earlier case. The facts as averred in the bill, except as to possession, are not materially variant from those in this record. This court there held that even assuming that Foreman was not advised of the fraudulent acts of the Adams, Richbourg and Barnett, the situation was presented where one of two innocent parties will lose. And the court sustained the appellant's contention that the deed having been fraudulently acquired from the escrow holder there was no delivery, and that without delivery it was without effect, and said that under such circumstances the grantor was no more liable to be deprived of his property by such wrongful act than he would be if he had deposited the deed in an iron safe which had been broken into and stolen.

We do not think that the possession shown by the evidence, or the failure of George Foreman & Company or Charles Foreman to have actual notice of the infirmity of the title, in any way estops the appellant from showing the true state of the title. Neither do we think that constructive notice of the filing of the two deeds, and of the mortgage deed, if he had such constructive notice of such instruments, which, under the true state of the title, were invalid to convey the title to the land or to encumber it, would estop him.

The possession of Barnett and Richbourg was notice to the world not of the apparent, but of the real title under which they held, which was that of an assignee of the rights of the Adams. These rights were not to ripen into a fee simple title to the land until the purchase price therefor had been paid.

The chancellor's decree should be reversed and the cause remanded for the entry of a decree that the equities of the consolidated causes is with the appellant and that in addition to the cancellation of the deeds and the records thereof, as to appellant, there should also be cancelled the mortgage deed executed by Barnett and Richbourg, and the record thereof in the public records of Okaloosa county, and that the costs of appellant in the Circuit Court should be taxed against the defendants Barnett and Richbourg and Charles Foreman, that the appellant be declared to be the holder of the legal title to this land, subject only to the terms and conditions of the contract or agreement to sell the same, a copy of which is attached to the original bill of complaint of appellant, and for such other relief as is prayed for by the appellant in his bill of complaint.

PER CURIAM—The record in this cause having been considered by this court, and the foregoing opinion prepared under Chapter 7837, Acts of 1919, adopted by the court as its opinion, it is considered, ordered and adjudged by the Court that the chancellor's decree should be reversed and the cause remanded for further proceedings in accordance with this opinion.

BROWN, C. J., AND WHITFIELD, ELLIS, TERRELL AND BUFORD, J. J., concur.

On Application for Rehearing.

PER CURIAM.—The decree of reversal herein is amended by adding thereto the following: Such further relief not to affect the decree in favor of the mortgagee Foreman in so far as such decree subjects the rights of Barnett and Richbourg as assignees of Adams under the contract for the

sale of the land by Houston to Adams, nor as to a deficiency decree against Barnett and Richbourg in favor of Foreman.

It is so ordered.

Rehearing denied.

All concur.