**CERTAIN LANDS IN SAID DISTRICT AND OWNERS THEREOF** v. **IDEAL FARMS DRAINAGE DISTRICT** a public corporation, et al.

24 So. (2nd) 585                                    June Term, 1945
December 4, 1945                                           Division A
Rehearing denied Feb. 15, 1946

*Shackleford, Farrior & Shannon,* for appellants.

*Erle B. Askew* and *H. E. Oxford,* for appellees.

ADAMS, J.:

The pertinent part of the decree appealed from is:

"The action was instituted by L. D. Oxford as Receiver of Ideal Farms Drainage District for the purpose of foreclosing drainage taxes which had been duly levied and assessed for the purpose of paying indebtedness incurred by said district at the time of the creation thereof, and said district, by and through its Board of Supervisors, to-wit: J. D. Simms, A. R. Bowyer and L. J. Mountz, joined in said proceeding for the purpose of foreclosing maintenance taxes which had been from year to year levied by the Supervisors for maintenance of said district."

The defendants interposed their answer to the foreclosure proceeding setting up in substance that:

"Although commissioners were appointed to make a true appraisal of the lands they never made a true assessment of the benefits and damages accruing to all of the lands in said district, but only made such appraisal and assessment as was fixed and caused to be prepared by a certain Mr. McElroy, which appraisal and assessments were not true and legal, but fanciful and arbitrary; that the total tax was not apportioned to and levied on each tract of land in the district, especially on the lands involved in this foreclosure proceeding, in proportion to benefits assessed, but in excess thereof; that the annual installments of the total tax were not levied or spread on the annual tax roll in proportion to the benefits, but on a percentage of the estimated cost of the work upon a fictitious and arbitrary basis; that the proceeds of the bond issue and of other evidence of indebtedness were not exclusively expended for drainage works and other costs authorized by law, but were wastefully expended, resulting in no real benefit whatsoever to the lands included in said alleged district, particularly to the lands involved in this foreclosure proceeding; that the total indebtedness of $250,000.00 was incurred and the proceeds thereof largely wasted or extravagantly expended contrary to law; that the total amount of the indebtedness incurred and the total tax levied were both far in excess of the total value of the land included in the alleged

district; that a fantastic showing was made that the benefits accruing to the lands within the alleged district exceeded the sum of one million dollars, although the average value of all the lands in said district will not exceed $5.00 per acre and that the majority of all the lands are fit for grazing and pasture lands only and that the total benefits purported to have been assessed as well as the total indebtedness incurred exceeds in each case a fair normal value of the lands."

The Court finds as follows:

"1. That Ideal Farms Drainage District is a public corporation of the State of Florida and was duly and regularly created, at least the regularity of its organization and creation was set at rest by the enactment of Chapter 10,699, Special Acts of Florida, 1925, page 2108.

"2. The lands described in the bill of complaint, and against which taxes were levied, are located within the Boundaries of said drainage district and were so located at the time the drainage taxes were assessed. A total tax was levied, as provided by law, for the purpose of raising revenue with which to carry out the drainage works in accordance with the plan of reclamation and this total tax was divided into annual installments of taxes, as provided by law, which said annual installments were levied annually as provided by statute.

"3. After the benefits had been assessed and taxes levied, the drainage district duly and regularly issued its obligations or bonds, which were duly validated and sold for the purpose of raising money with which to carry out the plan of reclamation.

"4. That L. D. Oxford is the duly qualified, and acting as, receiver of Ideal Farms Drainage District and is duly qualified and authorized to institute and prosecute this proceeding for the foreclosure of the annual installment taxes levied for the purpose of paying the obligations of said district and for carrying out the drainage works according to the plan of reclamation.

"5. That the present owners of the lands described in the bill of complaint did not own said lands when said drainage district was created, but acquired title several years after

the district was created, after the taxes were levied and after the bonds of the district were sold, the money procured and spent in carrying out the drainage works. The parties who owned the land at the time the district was created did not interpose any objection to the creation of said district, nor to the assessment of benefits, nor to the assessment and levy of taxes, nor to the issuance of bonds and, so far as the record discloses, they did not interpose any objection to the expenditure of money on the drainage works in accordance with the plan of reclamation. The record shows that one of the owners of several thousand acres of the land at the time the district was created was instrumental in the organization and creation thereof, was the chairman of the first meeting of the land owners held to elect a board of supervisors and was a member of the first board of supervisors.

"6. The defendant owners of the lands described in the bill of complaint acquired their title thereto by several conveyances and, with the exception of approximately 200 acres of the land so acquired, the deeds to the balance specified that the title to the lands therein described was conveyed subject to all outstanding state, county and drainage district liens and assessments and in some of said deeds it was specified that the grantee assumed said drainage liens and assessments and agreed to pay the same as a part of the consideration of the conveyance. The present owners of the lands described in the bill of complaint took no steps to contest the validity of said assessments nor any other acts done by the supervisors in the organization of said district until they filed their answer in this cause, as aforesaid.

"7. The record does not support the allegations of the defendants' answer that the money was wastefully expended, nor that the assessments far outweigh the benefits, neither does it establish the contention that the assessments are confiscatory. While there may have been, and probably was, a decrease in the value of the land, the record does not support the contention that this was due solely to the levy of the tax. The money was regularly borrowed but the results were not as anticipated, and while this may impose a hardship on some people, it is no reason for refusing payment, particularly is

this true where, as in this case, the title was acquired subject to the drainage taxes and in some cases where the payment of the tax was assumed.

"8. That annual installments of taxes were duly and regularly levied against each tract of land, hereinafter described and specified, in the sum and amount of said installments set out under the description of each of said tracts, for the respective years set opposite each amount, and penalties accrued thereon for the number of years herein specified below, pursuant to the provisions of Section 298.39, Florida Statutes, 1941, and the amount of said penalties are as set out under the description of each tract of land; and, the annual installments of taxes, from the respective dates of each levy thereof and the penalties from the date of the delinquency of said tax constitute liens upon each tract of land against which said taxes were levied and penalties accrued, which said lien is superior to all other liens except liens for state and county taxes, with which they are of equal dignity, and continue as liens until paid; and, the several respective sums representing annual installments of taxes and penalties, as hereinafter specified, are due under and by virtue of said liens upon the lands hereinafter described, in the following sums and amounts,"

We have detailed the decree at length because of the public nature of this case. Appellants complain bitterly that the tax is confiscatory and also that they, and other land owners in the district, had long ago assumed that the taxes were void and would never be enforced. The answer to this is that in this type of tax the court is not the judge of the amount, and furthermore there is no principle of law better known to lawyers and laymen than that the purchaser of property takes title subject to any valid encumbrance reflected by the public records.

Certain phases of the law of this case were settled when before us in Ideal Farms Drainage District, et al., v. Certain Lands In Said District, 153 Fla. 265, 14 So. (2nd) 416 and Ideal Farms Drainage District, et al., v. Certain Lands, 154 Fla. 554, 19 So. (2nd) 234. The question on this appeal resolves itself into the sufficiency of the evidence. The

chancellor was not satisfied that the appellants had sustained their answer by competent evidence. In this he was correct. The decree is affirmed.

CHAPMAN, C. J., TERRELL and BUFORD, JJ., concur.