**RHEINBERG KELLEREI GmbH,**
**Plaintiff–Appellant,**

v.

**BROOKSFIELD NATIONAL BANK OF**
**COMMERCE BANK,**
**Defendant–Appellee.**

No. 89–5553.

United States Court of Appeals,
Fifth Circuit.

May 22, 1990.

Appellee's Petition for Rehearing
Denied June 14, 1990.

Order Granting Appellant's Petition for Rehearing Granted in Part June 14, 1990.

Bernard J. Buecker, San Antonio, Tex., for plaintiff-appellant.

Cynthia S. Fox, Reese L. Harrison, Jr., Oppenheimer, Rosenberg, Kelleher & Wheatley, San Antonio, Tex., for defendant-appellee.

Before GARZA, GARWOOD and JOLLY, Circuit Judges.

GARZA, Circuit Judge:

American bank did not notify German bank of difficulty in payment on international collection order which came due on arrival of goods in Houston; the collection order was eventually dishonored. The district court held that the American bank did not know, and had no duty to inquire, whether goods had arrived, and entered take nothing judgment. Because we find that the American bank was on notice of the possibility of dishonor and should have told the German bank of the problem in collection, we REVERSE.

## FACTS

In January of 1986, J & J Wine, an American company, ordered a shipment of wine from a German firm, Rheinberg Kellerei GmbH, through an importer, Frank Sutton & Co.[1] Payment was to be made through an international letter of collection handled by Edekabank in Germany and Brooksfield National Bank of Commerce Bank in San Antonio ("NBC Bank").[2] On March 27, NBC Bank received the letter of collection, bill of lading and invoices from Edeka.[3] The letter of collection noted that payment was due "on arrival of goods in Houston harbor," and called for NBC Bank to notify Sutton "in case of any difficulty of lack payment." The invoices noted an estimated time of arrival: April 2, 1986. NBC Bank then presented the documents to J & J Wine on March 27.

There is some dispute as to what, exactly, J & J Wine told NBC Bank about its financial situation at the time, but it is sure that J & J Wine did not pay the amount due, and instead asked NBC Bank to hold the letter for a time while J & J Wine worked to raise the money for payment. NBC Bank did not notify Edeka or Sutton of J & J Wine's failure to pay on presentment. In fact, NBC Bank did nothing further until early May, when Sutton informed them that the wine was still at the Houston port and NBC Bank cabled Edeka for further instructions.

The wine had arrived in Houston on March 31, but NBC Bank did not receive notice of that. Because J & J Wine had not taken delivery of it, the wine sat, exposed, at Houston harbor in metal containers until it had deteriorated completely. U.S. Customs agents eventually sold it at auction.[4]

---

1. The "GmbH" designation means "Gesellschaft mit beschränkter Haftung," or "company with limited liability." GmbH is a common form of corporate organization in Germany and is similar to the "Inc." designation in the American corporate system.

2. In a case like this one, international letters of collection are issued by the seller's bank (Edeka) and sent to the buyer's bank (NBC Bank), which in turn presents the letter and its documents to the buyer. To receive the documents and collect the goods, the buyer pays the amount due to its bank, which then forwards the funds to the seller's bank. Enforcement of these letters is governed by the International Chamber of Commerce's International Rules for Collection.

3. The bill of lading called for notification of Sutton and M.G. Maher & Co., the customs broker, on arrival of the goods in Houston. NBC Bank was not listed on the Bill of Lading or the invoices.

J & J Wine subsequently went out of business, and Rheinberg Kellerei was never paid for the wine.

Rheinberg Kellerei then brought this suit, alleging that NBC Bank had negligently failed to inform it of J & J Wine's failure to pay, and that because of that negligence, the wine had spoiled at Houston harbor. After a bench trial, the district court entered a take-nothing judgment for NBC Bank.[5] The court reasoned that, because payment was not due until the wine's arrival, and NBC Bank had no notice of that arrival and no duty to inquire further, NBC Bank had no knowledge that J & J Wine was in breach of the payment terms. For that reason, the district court held that NBC Bank could not be held liable for failure to inform Edeka of J & J Wine's default.

Complaining that the district court improperly applied the requirements of the International Rules for Collection (the "Rules") and erred in construing the letter of collection itself, Rheinberg Kellerei brought this appeal.

## DISCUSSION

### I. *Duty to Inform*

NBC Bank presented the letter of collection and the other documents to J & J Wine for payment on March 27, 1986, before the wine had arrived and before the payment was due. Rheinberg Kellerei argues that, regardless of whether NBC Bank knew when the wine had arrived, once NBC Bank presented the documents, it had a duty to inform Edeka of any problem in collecting J & J Wine's payment. We agree. That duty arises both from the Rules and the collection letter itself.

### A. *Letter of Collection*

■ The letter, which is the primary source of responsibility in this case, in-

structs NBC Bank to notify Sutton "in case of any difficulty of lack payment."[6] The district court found that section demanded notice only if there were a "lack of payment or failure to pay." Likewise, NBC Bank emphasizes that the trigger for notice is a *lack* of payment.

What the court below and NBC Bank ignore is the word "difficulty." The letter did not instruct NBC Bank to notify Sutton only if there were a default, or a failure to pay, or a lack of payment. Rather, NBC Bank was called on to act also if there were any *difficulty* in collecting payment. And the request that NBC Bank hold the letter while J & J Wine sought financing certainly posed a difficulty in collection. Once NBC Bank knew that J & J Wine had asked for time to come up with the money, it should have notified Sutton in accordance with the letter's instructions.

The Rules specify that any special instructions posted on a letter of collection should be "complete and precise." General Provisions, sec. C. While the instructions given on this letter could have been in clearer language, they are sufficiently precise to make NBC Bank aware of its duty to notify Sutton once difficulty arose in the collection.

### B. *International Rules for Collection*

■ Article 20(iii)(c) of the Rules provides that the "collecting bank [NBC Bank] must send without delay advice of non-payment or advice of non-acceptance to the bank from whom the collecting order was received [Edeka]." The court below and NBC Bank submit that section called on NBC Bank to notify Edeka if J & J Wine had not paid on the letter at the time it came due: on arrival of the goods in Houston harbor. And, they argue, since NBC Bank had no actual notice of the arrival of the goods, it did not breach that duty to notify.

---

**4.** There is no evidence in the record as to the price paid at auction, or whether that amount was more than the customs and wharfage fees.

**5.** A non-binding arbitration panel had found NBC Bank liable, but NBC Bank appealed that

award, *de novo*, to the district court.

**6.** Sutton was Rheinberg Kellerei's agent in this sale.

The issue, it seems, is the definition of "non-payment" as it is used in Art. 20(iii)(c). Does it refer to a failure to pay on presentment? Does it require an affirmative statement of intent not to pay? Must the due date have arrived? No court has yet defined the term and its attendant duties, so we must look for guidance elsewhere.[7]

The Rules were adopted to aid in "defining, simplifying and harmonizing the practices and terminology used in international banking." I.C.C. Banking Commission, Statement of Services to Business. They serve, for the international banking community, the same function as the Uniform Commercial Code does for domestic players. There is no reason, then, to ignore the U.C.C. as an advisory source.

Section 4.502 of the U.C.C. governs payment of "on arrival" drafts, such as were presented in our case. Tex.Bus. & Com. Code Ann., sec. 4.502 (Tex.U.C.C.) (Vernon's 1968). Under that section, a bank such as NBC Bank may, but need not, present the documents to the buyer before the goods arrive. But if the buyer does not pay at that time, the bank must notify the seller's bank: "Refusal to pay or accept because the goods have not arrived is not dishonor; *the bank must notify its transferor of such refusal* but need not present the draft again...." U.C.C. sec. 4.502 (emphasis added). The U.C.C. imposes on the presenting bank a duty to notify the seller's bank of any delay or failure to pay on presentment of an "on arrival" draft, *whether or not the draft is yet due.*

If section 4.502 were applied to our case, NBC Bank would have a duty to notify Edeka of J & J Wine's failure to pay the letter of collection when it was presented on March 27, even though the goods were not yet in Houston harbor and the payment

was not yet due. This is not to say that J & J Wine was in default at that time or had dishonored the letter. Rather, the notice is an act of prudence, an exercise in due care. And, as the aims of the Rules and the U.C.C. are more than consistent, and both demand the exercise of due care, we find that the Rules impose the same duty. NBC Bank should have notified Edeka of J & J Wine's failure to pay at presentment, as that failure constituted a "non-payment" under Art. 20(iii)(c).

NBC Bank and the court below rely heavily on the fact that NBC Bank had no actual knowledge of the wine's arrival in Houston, and had no duty to inquire further. We agree with those premises, but do not feel they affect NBC Bank's duty to notify. That duty arose—under both the Rules and the letter itself—when J & J Wine failed to pay on presentment and asked for time. Arrival of the wine did not trigger it. And NBC Bank cannot avoid liability by hiding from knowledge of arrival and claiming that ignorance as a defense.

## II. *Damages*

State law governs the measure of damages in a case such as this one. *Gathercrest, Ltd. v. First American Bank & Trust*, 805 F.2d 995, 997 (11th Cir.1986). Tex.Bus. & Com.Code Ann., sec. 2.709(a) (Tex.U.C.C.) (Vernon's 1968) gives the relevant standard: "the seller may recover, together with any incidental damages under the next section, the price (1) of goods accepted or of conforming goods lost or damaged ... after risk of their loss has passed to the buyer."[8] Risk of loss had passed to J & J Wine when the goods arrived at Houston harbor and were available for J & J Wine to take delivery. Tex. Bus. & Com.Code Ann., sec. 2.509(a)(2) (Tex.U.C.C.) (Vernon's 1968). The district court found that because the wine was

---

7. A federal district court in Illinois mentioned Art. 20(iii)(c) in dicta in *Interpane Coatings, Inc. v. Australia and New Zealand Banking Group Ltd.*, 732 F.Supp. 909 (N.D.Ill.1990). The case was dismissed on forum non conveniens grounds, but the court did state that the collecting bank's duty to notify arises when the buyer "refuses to ... pay the money." This passing and ambiguous reference does not help our inquiry today.

8. The district court applied, and the parties refer to, U.C.C. sec. 2.708, which figures damages as the difference between market value *at the time and place for tender* and contract price, plus incidental damages. That section is inapposite here, as the wine's market value at the time of tender was destroyed by the long delay at Houston harbor. Section 2.708 is more properly used in cases where resale at a reasonable rate is possible. The wine's ultimate sale price

exposed for such a long period in Houston harbor, it was " 'over cooked' and had deteriorated, lost its original flavor, freshness, was flat and should not be sold into the market that it was intended." Since the goods were so damaged, Rheinberg Kellerei is entitled to the contract price plus the unpaid freight costs, as provided in U.C.C. section 2.709(a)(1).[9]

NBC Bank is entitled to a credit for the net proceeds of any resale of the damaged wine. U.C.C. sec. 2.709(b). Customs agents sold the wine at auction, but we have no evidence before us of the price paid or the net amount remaining after customs fees, wharfage, and the costs of the auction were paid. For that reason, we remand this case to the district court for the limited purpose of calculating that net amount. After finding that net amount, the district court should enter judgment for Rheinberg Kellerei for the contract price plus freight charges, less the net proceeds of the customs auction.

## CONCLUSION

NBC Bank had a duty to notify Edeka or Sutton, which was triggered when J & J Wine failed to pay the letter of collection on presentment and asked for more time. That duty arose from two sources: the Rules and the letter itself. Though payment was not due until the wine arrived in Houston harbor, that arrival was not a triggering event for the duty to arise, and lack of knowledge of it is no defense. The judgment of the district court is, therefore, REVERSED, and this cause is REMANDED for calculation of damages.

It is so ordered.

## ORDER ON PETITIONS FOR REHEARING

PER CURIAM:

Appellant's Petition for Rehearing is hereby granted as follows:

We have ordered the court below to hold a hearing to determine damages. Included in that hearing, the court should also determine Appellant's attorneys' fees in the

court below and in this court and interest as allowed by Texas law.

---

here bears no resemblance to its market price at the time of tender.

**9.** The contract price was 40,176 German marks, and the freight costs were \$3,622.01.