# Third District Court of Appeal
## State of Florida

Opinion filed October 11, 2023.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D22-453 & 3D22-1468
Lower Tribunal Nos. 14-30864 & 22-6957

_____

**Adeena Weiss, etc., et al.,**
Appellants,

vs.

**BI 27, LLC, et al.,**
Appellees.

Appeals from the Circuit Court for Miami-Dade County, Migna Sanchez-Llorens, and Alan Fine, Judges.

Torricella Law, PLLC, and Maurice J. Baumgarten, for appellants.

Carlton Fields, P.A., and Christopher W. Smart (Tampa), and Dean A. Morande (West Pam Beach), for appellees.

Before EMAS, MILLER, and BOKOR, JJ.

MILLER, J.

In these consolidated appeals, appellants, Adeena Weiss-Ortiz, individually and derivatively on behalf of Towers of Blue Lagoon, Inc., Towers of Blue Lagoon 1, Inc., Towers of Blue Lagoon 2, Inc. (collectively, the "Tower Entities"), and Intercontinental Investment Bankers, challenge final orders adversely adjudicating their quiet title claims against two mortgagees, appellees BI 27, LLC and TIG Rompsen US Master Mortgage LP.[1] The trial court found that section 48.23(1)(b), Florida Statutes (2020), shielded the mortgagees from suit. Finding that material factual issues precluded application of the statute, we reverse.

**Background**

This is a heavily litigated intra-family dispute that traces its origin to the death of Weiss-Ortiz's father, Jack Weiss, a prominent attorney. The parties are not strangers to the court. See Ortiz v. Weiss, 227 So. 3d 689 (Fla. 3d DCA 2017); Ortiz v. Weiss, 282 So. 3d 949 (Fla. 3d DCA 2019); Weiss v. Weiss, 317 So. 3d 167 (Fla. 3d DCA 2021).

Weiss-Ortiz filed suit in the instant case against her mother, Caroline Weiss, along with the Estate of Jack Weiss and Towers of Blue Lagoon (1), seeking to quiet title to three parcels of real property located near the Miami

---

[1] A third case, 3D22-2136, remains pending in this court. It has been consolidated with this appeal for record purposes only.

International Airport (the "Tower Properties"). She alleged that Weiss fraudulently divested her of the property through the creation of sham corporations. Shortly thereafter, she recorded a notice of lis pendens with the clerk of courts.

Six iterations of the complaint followed. In the first two complaints, Weiss-Ortiz alleged that she owned the Tower Properties because she and her sister each owned fifty percent of the corporate shares in the Tower Entities. She further alleged that her mother fraudulently quitclaimed the Tower Properties, first to the Caroline Weiss Life Estate and then to the newly created sham entities bearing substantially similar names to the Tower Entities.

Weiss moved to discharge the lis pendens, or alternatively, to require the posting of an adequate bond. The trial court conducted an evidentiary hearing and set a $2 million bond. Weiss-Ortiz failed to pay the bond, and the trial court formally discharged the lis pendens. Fifteen days later, Weiss mortgaged the Tower Properties in exchange for a $5 million loan from Elite Construction Management, LLC.

Weiss-Ortiz then filed a second amended complaint, adding derivative claims on behalf of the Tower Entities and Intercontinental Investment Bankers, Inc. and adding 7 at Blue Lagoon (2), LLC and Elite as defendants.

3

This time, she appended to the complaint recorded deeds demonstrating the Tower Entities' ownership of the Tower Properties. She also attached a myriad of other documents including corporate meeting minutes, a shareholders' agreement, a resignation announcement, and a recorded disclaimer of property interest purportedly executed by Weiss.

On February 10, 2017, Elite assigned the mortgage to Riviera Management Services, S.A., formerly known as Toruna Management, Inc. On December 19, 2017, Riviera assigned the mortgage to BI 27, LLC. On March 20, 2020, BI 27 assigned the mortgage to TIG Rompsen US Master Mortgage. The same day, Weiss remortgaged the Tower Properties in exchange for a $21.3 million dollar loan from TIG. The loan documents were signed by Weiss in her capacity as "manager" of the 7 at Blue Lagoon (1) and 7 at Blue Lagoon (2).

Meanwhile, Weiss-Ortiz and the Tower Entities amended their complaint to add a claim, first against Toruna Management, Inc. and then against BI 27. In the sixth amended complaint, they alleged that BI 27's mortgage was "not supported by consideration" and Elite approved the original loan despite having actual knowledge that Weiss was neither the owner of the property nor otherwise authorized to execute the mortgage.

Weiss-Ortiz then sought to amend the complaint again to add TIG as a defendant. The trial court denied the request, and Weiss-Ortiz and the Tower Entities filed a separate suit against TIG, along with another notice of lis pendens.

BI 27 moved for a partial final summary judgment on the sixth amended complaint. It argued it was entitled to a final judgment pursuant to section 48.23(1)(b)2., Florida Statutes, because it acquired its lien after the trial court discharged the original lis pendens.

Weiss-Ortiz and the Tower Entities opposed the summary judgment on a multitude of grounds, among them that the application of the statute was not yet ripe for resolution because the later-recorded deeds were procured by fraud and therefore void. The trial court granted the motion, and, in the companion case, TIG successfully moved for dismissal and discharge of the lis pendens on res judicata grounds. This appeal followed.

## STANDARD OF REVIEW

Our standard of review is de novo because this is an appeal from an order granting summary judgment that implicates an issue of statutory construction. 814 Prop. Holdings, LLC v. New Birth Baptist Church Cathedral of Faith Int'l, Inc., 344 So. 3d 535, 538 (Fla. 3d DCA 2022).

## ANALYSIS

5

Two well-entrenched sources of law guide our resolution of this appeal. The first, the lis pendens statute, codified in section 48.23, Florida Statutes, "defines the notice of lis pendens, addresses the applicability of the notice and the extent to which the notice bars claims and other interests, prescribes the life of the notice, and provides for renewals and the discharge of the notice when appropriate." The Florida Bar, James H. McCarty, Jr., Florida Real Property Litigation ch. 11 Notice of Lis Pendens § 1 Introduction (10th ed. 2021). The second is the unyielding legal principle that fraud in the execution renders an instrument affecting the title to real property void.

A notice of lis pendens serves the dual purpose of protecting "future purchasers or encumbrancers of the property from becoming 'embroiled' in the dispute, and . . . the plaintiff from 'intervening liens that could impair any property rights claimed.'" Fischer v. Fischer, 873 So. 2d 534, 536 (Fla. 4th DCA 2004) (quoting Chiusolo v. Kennedy, 614 So. 2d 491, 492 (Fla.1993)). Although the doctrine of lis pendens traces its origins to civil common law, De Pass v. Chitty, 105 So. 148, 149 (Fla. 1925), in Florida, a lis pendens "is wholly statutory and includes matters well beyond simply maintaining the status quo." Adhin v. First Horizon Home Loans, 44 So. 3d 1245, 1252 (Fla. 5th DCA 2010). Section 48.23(1)(b), Florida Statutes (2019), the lis pendens statute, provides, in pertinent part:

6

1. An action that is filed for specific performance or that is not based on a duly recorded instrument has no effect, except as between the parties to the proceeding, on the title to, or on any lien upon, the real or personal property unless a notice of lis pendens has been recorded and has not expired or been withdrawn or discharged.

2. Any person acquiring for value an interest in, or lien upon, the real or personal property during the pendency of an action described in subparagraph 1., other than a party to the proceeding or the legal successor by operation of law . . . shall take such interest or lien exempt from all claims against the property that were filed in such action by the party who failed to record a notice of lis pendens or whose notice expired or was withdrawn or discharged, and from any judgment entered in the proceeding . . . as if such person had no actual or constructive notice of the proceeding or of the claims made therein or the documents forming the causes of action against the property in the proceeding.

This court has determined that these provisions do not apply to actions founded upon a duly recorded written instrument. See U.S. Bank Nat'l. Ass'n v. Bevans, 138 So. 3d 1185, 1188 (Fla. 3d DCA 2014). In such cases, the proponent of the claim maintains a lis pendens as a matter of right.

Invoking our decision in 100 Lincoln Rd SB, LLC v. Daxan 26 (FL), LLC, 180 So. 3d 134 (Fla. 3d DCA 2015), Weiss-Ortiz and the Tower Entities contend the second amended complaint and its progeny were founded upon duly recorded written instruments. Thus, they argue, they maintained a lis pendens as a matter of right. We agree that the relevant pleadings sought a declaration of ownership based upon the assertedly superior deeds and

7

accompanying documents.  Although the law in this arena is far from a model of clarity, Weiss-Ortiz and the Tower Entities persuasively argue that, under these circumstances, any relief afforded to them under the relevant complaints would have necessarily been "based upon, arising from, growing out of, or resting upon" the recorded documents.  Avalon Assocs. of Del. Ltd. v. Avalon Park Assocs., Inc., 760 So. 2d 1132, 1135 (Fla. 5th DCA 2000).

Further, casting aside the fact that section 48.23(1)(b) strictly insulates nonparties and both BI 27 and TIG acquired interests from Elite, a party-defendant to the lawsuit, this dispute involves a claim *to*, as distinguished from a claim *against*, the Tower Properties.  Weiss-Ortiz and the Tower Entities did not seek a declaration as to the priority of the competing liens of rival creditors.  Instead, they asserted that the series of deeds conveying ownership, first to Weiss and then the newly created entities, were fraudulently executed and Elite was essentially a bad faith mortgagee.  This claim was factually supported by a voluminous submission filed in opposition to summary judgment.  Of course, BI 27 sharply disputed the allegations.

Under Florida law, a deed procured by fraud in the execution is void. See McCoy v. Love, 382 So. 2d 647, 649 (Fla. 1979).  Equally axiomatic is that a forged mortgage is a legal nullity.  Jamnadas v. Singh, 731 So. 2d 69, 70 (Fla. 5th DCA 1999).  Consequently, "[a] forged deed provides no

8

protection to those claiming under it." <u>Sabawi v. Carpentier</u>, 778 So. 2d 1091, 1092–93 (Fla. 5th DCA 2001) (citing <u>McCoy</u>, 382 So. 2d at 648)); <u>see also</u> <u>CitiMortgage, Inc. v. Porter</u>, 261 So. 3d 739, 743 (Fla. 3d DCA 2018).

Against these principles, we conclude the dueling summary judgment allegations created material and triable factual issues. Accordingly, we reverse and remand the orders under review for further proceedings not inconsistent herewith.

Reversed and remanded.